| | |
|---|---|
| 1 | Melody L. Sequoia, CA State Bar No. 309163 |
| 2 | melody@sequoialawfirm.com<br>THE SEQUOIA LAW FIRM |
| 3 | 530 Oak Grove Avenue, Suite 102<br>Menlo Park, California 94025 |
| 4 | Telephone: (650) 561-4791<br>Facsimile: (650) 561-4817 |
| 5 | |
| 6 | Matthew C. Helland, CA State Bar No. 250451<br>helland@nka.com |
| 7 | NICHOLS KASTER, LLP<br>235 Montgomery Street, Ste. 810 |
| 8 | San Francisco, CA 94104<br>Telephone: (415) 277-7235 |
| 9 | Facsimile: (415) 277-7238 |
| 10 | Additional Attorneys Listed on Signature Page |
| 11 | Attorneys for Plaintiff Daniel De Sloover |
| 12 | and the putative class. |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO/OAKLAND DIVISION**

| | |
|---|---|
| Daniel De Sloover, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>　　　　　　　　　　Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**(1) Breach of Contract**<br><br>**(2) Unjust Enrichment**<br><br>**(3) Frustration of Purpose**<br><br>**(4) Violation of California Business and Professions Code § 17200** *et seq.* |

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiff Daniel De Sloover ("Plaintiff"), by and through his attorneys and on behalf of himself and all others similarly situated, hereby submits this Class Action Complaint against Defendant Farmers Insurance Exchange ("Farmers" or "Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This case is filed to end Farmers' practice of unfairly profiting from the global COVID-19 pandemic.

2. Beginning in March 2020, states across the country, including California, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3. While many companies, industries, and individuals have suffered financially as a result of the COVID-19 pandemic, auto insurers like Farmers have scored a windfall. Not surprisingly, as a result of state-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. This decrease in driving and accidents has significantly reduced the number of claims that auto insurers like Farmers have paid, resulting in a drastic and unfair increase in Farmers' profits at the expense of its customers.

4. One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid-March and the end of April of 2020. Despite full knowledge of these facts, Farmers has failed to issue adequate refunds. The company's short-lived credit program was woefully inadequate to compensate its customers for overpayments resulting from COVID-19. The program applied only a 25% credit for April 2020 premiums and an even smaller 15% credit for May 2020 premiums. No additional credits or refunds have been provided.

5. To remedy Defendant's unlawful conduct, Plaintiff brings this class action alleging violations of California state law. Plaintiff seeks disgorgement of the ill-gotten gains

obtained by Farmers to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## **JURISDICTION**

6.   This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendant.

## **VENUE**

7.   Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because Defendant resides in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## **INTRADISTRICT ASSIGNMENT**

8.   Pursuant to Civil L.R. 3-2(c) and (e), and 3-5(b), this action is properly assigned to the San Francisco/Oakland Division of the Northern District of California because a substantial portion of the events or omissions giving rise to the dispute occurred in Alameda County.

## **PARTIES**

9.   Defendant Farmers Insurance Exchange is a California company with a principal place of business in Woodland Hills, California. Defendant sells personal automobile insurance in states around the country, including California. Defendant issued auto insurance policies to Plaintiff and the members of the putative class during the time period at issue.

10.   Plaintiff is an adult resident of Alameda, California. Plaintiff has held personal auto insurance policies purchased from Farmers during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the credit given by Farmers is wholly inadequate to compensate Plaintiff for his overpayments on these policies.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**A.   The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

11.   In late December 2019, a novel coronavirus known as SARS-CoV-2 began to spread around the globe. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States.

12.   By mid-March, there were thousands of confirmed cases of COVID-19 across the United States and hundreds in the State of California alone.

13.   Like many states around the country, California responded to the worsening COVID-19 crisis with measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

14.   On March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency in California as a result of COVID-19. In the following weeks, the state rolled out a series of social distancing measures, including, for example, recommendations that older adults and those with elevated risk should self-isolate.

15.   On March 19, 2020, Governor Newsom instituted a statewide stay-at-home order,[1] making California among the first states to establish such an order. With some exceptions, the order mandated "all individuals living in the State of California to stay home."[2]

16.   In the time since Governor Newsom first instituted the stay-at-home order, California's progress toward reopening has been halting, and additional stay-at-home orders were imposed in response to the spread of COVID cases.

**B.   Farmers Has Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

17.   Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance—a $250 billion industry—

---

[1] Executive Order N-33-20 (Mar. 19, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.
[2] *Id.* ¶ 1.

stands to secure a windfall from COVID-19-related restrictions. The reason is simple. As one report put it: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[3]

18. Beginning in mid-March of 2020, the number of miles driven by individuals has dropped dramatically because of COVID-19. This includes the State of California. Through the use of cell phone location data, it has been reported that vehicle miles traveled in California dropped significantly from their January 2020 average in March and April of 2020:[4]

| Date Range | Decrease in Miles Traveled |
| --- | --- |
| March 15 - March 21 | -53% |
| March 22 - March 28 | -72% |
| March 29 - April 4 | -74% |
| April 5 - April 11 | -77% |
| April 12 - April 18 | -74% |
| April 19 - April 25 | -71% |

Upon information and belief, decreases in pre-COVID miles traveled continued through the end of 2020, and well into 2021.[5]

19. Automobile accidents have also decreased. According to the Road Ecology Center at the University of California, Davis, traffic collisions, including those involving injuries or fatalities, dropped by roughly half after California instituted its stay-at-home order.[6]

---

[3] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf.
[4] *See id.* at 6-8.
[5] *See id.* at 2; *see also* Center for Economic Justice & Consumer Federation of America, Auto Insurance Refunds Needed as New Data Show Crashes Remain Well Below Normal Due to Pandemic (Dec. 22, 2020), https://consumerfed.org/press_release/auto-insurance-refunds-needed-as-new-data-show-crashes-remain-well-below-normal-due-to-pandemic-23-fewer-accidents-in-september-and-october/.
[6] Fraser Shilling and David Waetjen, *Special Report: Impact of COVID19 Mitigation on Numbers and Costs of California Traffic Crashes*, Road Ecology Center, UC Davis, Apr. 1, 2020 (updated Apr. 15, 2020),

20. This dramatic decrease in driving and auto accidents allowed auto insurance companies, including Farmers, to unfairly profit at the expense of their customers during the COVID-19 pandemic. Auto insurance rates, including those set by Farmers, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions in insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders going forward, but also for existing policyholders whose premium was based on now-overstated expectation about insurance claims.[7]

21. The excessive premiums collected and not refunded by Farmers during the COVID-19 pandemic have led to a substantial windfall.

**C.   Farmers Has Failed to Give Adequate Refunds to Plaintiff and Other Policyholders in California**

22. According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including Farmers, just for the time period from mid-March through the end of April 2020.[8]

23. At all relevant times, Farmers has been aware of the need to refund premiums in order to correct the unfair windfall it gained from policyholders in California as a result of the

---

https://roadecology.ucdavis.edu/files/content/projects/COVID_CHIPs_Impacts_updated_415.pdf.
[7] CEJ/CFA Report, *supra*, at 4.
[8] CEJ/CFA Report, *supra*, at 12-13.

COVID-19 crisis. Farmers has likewise been aware of its excessive profits. Despite this, Farmers has failed to adequately return these profits to its customers.

24. In spring 2020, Farmers announced that it would provide a 25% premium credit for the month of April 2020. The company later announced that an additional 15% credit for the month of May 2020. No other credits or refunds have been provided.

25. Farmers' credit program was inadequate to compensate its customers for the unfair windfall that the company has obtained as a result of COVID-19. The credits were nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund for just the first the first two months of the pandemic.

26. Plaintiff has been a customer of Farmers since 2018. In fall 2019, Plaintiff purchased a renewal auto insurance policy for the six-month period beginning on December 1, 2019 and ending on June 1, 2020. Premiums were $621.20, paid monthly. Plaintiff renewed again for the six-month periods beginning on June 1, 2020 and ending on December 1, 2020; beginning on December 1, 2020 and ending on June 1, 2021; and beginning on June 1, 2021 and ending on December 1, 2021. Premiums for each of these additional renewal periods were $667.20, paid monthly.

27. In April 2020, Plaintiff received a premium credit of $25.88 from Farmers under the program described above. Plaintiff received another credit of $15.53 in May 2020. Plaintiff has received no other premium credits or refunds from Farmers to date.

28. Plaintiff renewed his policy and did not cancel his policy with Farmers based on Defendant's failure to disclose the fact and amount of its excessive profits caused by COVID-19, and the fact that its premiums are not based on an accurate assessment of risk during COVID-19. Had Farmers disclosed these facts, Plaintiff would not have renewed his Farmers auto insurance policy.

29. Farmers' insurance policies, including the policies of Plaintiff and the members of the putative class, contain the following provision:

    2. YOUR DUTY TO REPORT CHANGED CIRCUMSTANCES

    a. **Your** policy was issued in reliance on the information **you** provided **us** at time of application, including information concerning any **cars** and persons insured by the policy. **You** agree to cooperate with **us** in determining if the information you provided and upon which **we** relied to issue this policy is correct and complete. **You** agree by acceptance of this policy that all information shown on the **Declarations Page** of **your** policy and on the Application is accurate.

    b. **You** agree that if any information changes, is incorrect or incomplete, **you** will notify **us** as soon as reasonably practicable to change it. If **we** determine any information is incorrect or incomplete, we may change it. Based upon any new information **you** report or **we** may discover **we** may adjust **your** coverage and premium accordingly during the policy period. Any recalculation by **us** of **your** premium, or any changes **we** make to **your** coverage, based on new information acquired, will be made using the rules, rates and forms used in **your** state as of the date of the change.

30. This provision vests Farmers with discretion to adjust premiums if the information on which those premiums is based changes or becomes incorrect. This includes changes in the use of the insured vehicle.

31. Farmers improperly exercised that discretion by failing to issue refunds of the now-excessive premiums.

32. Plaintiff's policies described above were in effect during the time period during which most of the United States, including California, was significantly impacted by the global COVID-19 pandemic and during which stay-at-home orders, along with other measures and conditions, caused a widespread and dramatic decrease in automobile use and traffic. Despite this, Farmers only gave Plaintiff an inadequate 25% credit on his April monthly 2020 premiums, and an even smaller 15% credit on his May 2020 monthly premium.

33. Upon information and belief, thousands of other policyholders in California have been injured by Farmers' policy and practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic.

## CLASS ACTION ALLEGATIONS

34. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

35. The proposed class is defined as follows: All California residents who purchased personal automobile insurance from Farmers covering any portion of the time period from March 1, 2020 to the present.

36. The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from Farmers' records.

37. There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

38. The common questions of law and fact include, but are not limited to:
   a. Whether Farmers has a common policy or practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic;
   b. Whether Farmers' refund program is inadequate;
   c. Whether Farmers violated the covenant of good faith and fair dealing;
   d. Whether the payment of full premiums by Plaintiff and the members of the putative class is excused by frustration of purpose;
   e. Whether Farmers was unjustly enriched as a result of its failure to provide adequate refunds to its customers;
   f. Whether Farmers' failure to provide adequate refunds to its customers is unlawful, unfair, and fraudulent;
   g. Whether Farmers has violated California consumer protection laws through its failure to provide adequate refunds to its customers and its failure to disclose the inadequacy of its refunds; and
   h. the proper measure and calculation of damages.

39. The questions of law and fact listed above will yield common answers for Plaintiff and the class as to whether Farmers is liable for the alleged legal violations.

40. Plaintiff's claims are typical of those of the members of the class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

41. Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

42. Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because Farmers has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

43. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Farmers' policies and practices. There will be no difficulties in managing this action.

44. In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CAUSES OF ACTION

### COUNT I

**Breach of Contract - Violation of the Covenant of Good Faith and Fair Dealing**

**(On Behalf of Plaintiff and the Putative Class)**

45. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

46. Under California law, a covenant of good faith and fair dealing is implied into every contract. A party is not permitted to do anything which will frustrate the other party's right to the benefits of the agreement. And where a contract vests one party with discretion affecting the rights of another party, the covenant requires that the discretion be exercised in good faith.

47. Plaintiff and the members of the putative class purchased insurance contracts from Farmers.

48. Farmers' insurance contracts give Farmers discretion to adjust premiums if the information upon which those premiums are based changes or becomes incorrect. That information changed and became incomplete and incorrect when the COVID-19 pandemic caused a substantial reduction of driving in California.

49. Farmers exercised its contractual discretion in bad faith by failing to issue adequate refunds of premiums. It would not have been within the contemplation of the parties at the time of contracting that Farmers would fail to refund premiums in the face of a global pandemic that drastically reduced driving in the state.

50. Farmers' conduct frustrated Plaintiff's and the putative class's right to the reasonably expected benefits of the bargain. Those benefits include the reasonable expectation that insurance premiums will be based on an accurate assessment of risk, and that the insurer will treat its insureds honestly and fairly.

51. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Farmers' unlawful conduct.

## COUNT II

### Unjust Enrichment/Quasi-Contract

### (On Behalf of Plaintiff and the Putative Class)

52. Plaintiff pleads this Count in the alternative to his other Counts herein.

53. As a result of Farmers' failure to provide adequate refunds to its customers as described herein, Farmers has been unjustly enriched.

54. Farmers was enriched under circumstances that it cannot conscientiously retain its gain at Plaintiff's and the putative class's expense.

55. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Farmers' unlawful conduct.

## COUNT III

### Frustration of Purpose

### (On Behalf of Plaintiff and the Putative Class)

56. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

57. A party's performance of a contract is excused when a basic purpose of that party in making the contract, as recognized by both parties, is substantially or totally destroyed; the frustrating event is not reasonably foreseeable; and the frustrating event is so severe as to not be fairly regarded as among the risks assumed under the contract.

58. At the time Plaintiff and the members of the putative class purchased auto insurance policies from Farmers, the global COVID-19 pandemic and its full effects were not reasonably foreseeable, and the risk of the pandemic was not among the risks assumed by Plaintiff and the putative class under the policies.

59. The parties knew that receiving insurance coverage at rates based on an accurate assessment of risk was a principal purpose of the policies. As a result of the global COVID-19 pandemic, the related stay-at-home orders, and the drastic reduction in driving among the risk pool, that purpose was substantially destroyed.

60. Plaintiff and the members of the putative class seek a declaration that payment of full premiums is no longer required, and that Farmers must disgorge its unfair windfall from premiums paid to date.

## COUNT IV

### Violation the California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (On Behalf of Plaintiff and the Putative Class)

61. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

62. Plaintiff and Farmers are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

63. The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

64. By committing the acts and practices alleged herein, Farmers has engaged in unlawful, unfair, and fraudulent business acts and practices, in violation of the UCL.

65. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims. Farmers has violated the UCL's proscription against unfair business practices by, among other things: failing to fully refund premiums with full knowledge of the amount and extent of their excess and the fact that they are not based on an accurate assessment of risk, and failing to disclose the fact that it is earning excessive profits, or the amount of those profits.

66. There is no societal benefit from Farmers' conduct—only harm to consumers. Farmers has engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

67. There were reasonably available alternatives to further Farmers' legitimate business interests, other than the conduct described herein.

68. Plaintiff and the members of the putative class paid premiums to Farmers and did not have those premiums refunded, and they purchased, renewed, and did not cancel their policies, as a result of Farmers' conduct.

69. The injury caused by Farmers' failure to provide adequate refunds is substantial in light of very conservative calculations that a 30% minimum average premium refund to would be required to correct the unfair windfall just for the time period from mid-March through the end of April 2020.

70. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Farmers' conduct in violation of UCL.

71. Through its practices, Farmers has improperly obtained and continues to improperly obtain and retain money from Plaintiff and the members of the putative class.

72. Plaintiff therefore requests that this Court grant the relief enumerated below. Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative class, prays for relief as follows:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B. The appointment of Plaintiff as class representative and his counsel as class counsel;

C. A declaration that the practices complained of herein are unlawful and violate the laws of California alleged herein;

D. An injunction against Defendant from engaging in the unlawful practices complained of herein;

E. Awarding Plaintiff and the members of the putative class their damages in an amount to be determined at trial, including compensatory damages, consequential damages, punitive damages, and any other damages provided under relevant laws;

F. Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendant from its unjust enrichment;

G. An order awarding Plaintiff and the class attorneys' fees, costs, and expert costs;

H. An order awarding Plaintiff and the members of the putative class pre-judgment and post-judgment interest, as allowed by law; and

I. Such further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

| | | | |
|---|---|---|---|
| 1 | Dated: June 21, 2021 | By: | /s/ Robert L. Schug |
| 2 | | | Robert L. Schug, CA State Bar No. 249640 |

Melody L. Sequoia, CA State Bar No. 309163
melody@sequoialawfirm.com
THE SEQUOIA LAW FIRM
530 Oak Grove Avenue, Suite 102
Menlo Park, California 94025
Telephone: (650) 561-4791
Facsimile: (650) 561-4817

Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Ste. 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Matthew H. Morgan, MN State Bar No. 0304657*
morgan@nka.com
Robert L. Schug, CA State Bar No. 249640
schug@nka.com
Chloe A. Raimey, MN State Bar No. 0398257*
craimey@nka.com
NICHOLS KASTER, PLLP
80 S. 8th Street, Ste. 4700
Minneapolis, MN, 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

Ryan F. Stephan, IL State Bar No. 6273101*
rstephan@stephanzouras.com
James B. Zouras, IL State Bar No. 6230596*
jzouras@stephanzouras.com
Teresa M. Becvar, IL State Bar No. 6312328*
tbecvar@stephanzouras.com
Catherine T. Mitchell, IL State Bar No. 6321142*
cmitchell@stephanzouras.com
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
Facsimile: (312) 233-1560

Attorneys for Plaintiff Daniel De Sloover
and the putative class.

*Pro hac vice application forthcoming

14

CLASS ACTION COMPLAINT